In United States v. Mendoza-Lopez, the Supreme Court said that where a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of criminal sanction, there must be some meaningful review of the administrative proceeding. In this case, the District Court imposed a 16-level sentencing enhancement under Guideline Section 2L1.2, notwithstanding the fact that the deportation order the District Court relied upon had never been subjected to meaningful judicial review. And for that reason, we're asking that the Court remand to the District Court for resentencing without imposition of the 16-level enhancement. What are the circumstances of their agreeing to his deportation initially? Your Honor, the initial deportation order entered in 2000 was part of a stipulated deportation process. Essentially... I understand that, but how did that come about? Your Honor, I'm not privy, but I do know that the general practice is that the service, at that point the service, would make a request or an offer to an alien and say, if you submit to this process, we'll expedite your removal from the United States. There's no need for you to go through the formal process. But the Court visited that procedure in United States v. Ramos just last year and found that the procedure used in the stipulated processes, the stipulated deportations, do not comply with due process where the immigration judge does not make his own findings that the individual knowingly and voluntarily waived his rights to, for example, appeal the decision. And so the deportation we have here in Mr. Rodriguez's case, he never, he never saw a judge and the judge never passed on whether or not he was knowingly and voluntarily waiving his right to appeal. And that's what invalidates that initial deportation. Now, he was then physically removed from the United States on subsequent occasions. But each of those removals was based on reinstatements of that prior invalid order. So what we have is a series of removals from the United States that were affected pursuant to an invalid initial order. Now, this Court. I just want to make sure I get this. He's removed through an official proceeding. And then he comes back. And then his removal is reinstated. He's kicked out again. He comes back. Reinstated. He goes to get kicked out. He comes back. How many times did he go back and forth? I believe that it was a total of four. Now, is it your contention that the judge can't take that into account in sentencing? The judge can take into account his multiple returns. And she did. My contention, Your Honor, is that the judge could not impose the 16-level enhancement based on that invalid deportation. On demand, the judge would be free to consider any factors under Section 3553A and decide that perhaps a higher sentence is warranted. Well, under your logic, if he's not properly removed by these reinstatements, why should the judge even be allowed to consider that? Any of the prior removals? Any of the reinstatements that he's told you're kicked out. He comes back. He's kicked out. He comes back. Why should the judge be allowed to consider any of that at all if, you know, following your logic that the initial removal was invalid? Well, it's a fair point, Your Honor. I think what the judge can consider is the fact that Mr. Rodriguez had been subject to criminal prosecutions for coming back in the past. So it's those that she can take into account because he was convicted. But I think the court is right. Each of the removals itself suffers from the same defects that the removal that was used as a predicate for the 16-level enhancement suffers from. That is that there is no valid underlying deportation order. And again, going back to Mendoza, this was clearly the imposition of a criminal sanction. But aren't district judges, in the context of sentencing, given more leeway, they can consider things that wouldn't otherwise be admissible or pertinent in an underlying criminal charge? That's correct. This Court has repeatedly said that under the relevant conduct provisions in the guidelines, the courts can consider even acquitted conduct. And we're not saying that the court couldn't consider things like the prior convictions, couldn't consider the fact that he had other convictions. What we're saying, Your Honor, is that the imposition of the 16-level enhancement was there. And that that error alone, under this Court's findings in Munoz-Camarena, necessitates a remand to the district court because in the first instance, the district court has to properly calculate the guidelines. And then the court can go through its analysis of the 3553A factors and any other reasons for varying up from what ought to be, in the first instance, a correct calculation of the guidelines. So you're arguing procedural error, basically. That's correct. And what sentence did your client actually get? He received 48 months total. He received consecutive sentences on each of the two illegal reentry, excuse me, illegal entry convictions. So 24 months on each. And that's because this Section 1325 has a two-year maximum? That's correct. So I can imagine if we sent this particular case back on the grounds that the sentencing enhancement can only be applied if their original deportation was lawful, he's probably going to get the same sentence. She very well could, Your Honor, impose the same sentence to the district court. But again, it's not via the enhancement. Correct. It has to be without imposing that enhancement first. And her reasoning in imposing a sentence that will now start at a base offense level A is going to have to be fulsome. She's going to have to really describe why under Section 3553A a variance up from a base offense level A's all the way to the statutory maximum and then consecutive sentences on each of those counts is appropriate. And that's the point, Your Honor, is that there is no such explanation because what the court did was rely on this erroneous application of the guidelines that violates Mendoza's prescription. Do you agree with Judge Silverman's point that in considering, in reconsidering the sentence, she would be able to consider the circumstances of these prior removals? I think, Your Honor, that because each of the removals was itself invalid, what the court could consider is the fact that each time he returned, he was committing a new offense. Sometimes it was charged, sometimes it wasn't. That's what she can consider that conduct. She cannot consider the removals themselves, though, because each of those removals was affected pursuant. But that he returned, and that was in a charge or in charge. I think because that is separate criminal conduct. And he was charged twice for returning, once illegal entry and once an illegal reentry charge that predated the Ramos decision. Excuse me, I didn't mean to interrupt you. Did you want to save any time for rebuttal, or do you want to? I'm looking at the clock here. I'd like to save just a minute for rebuttal. And so there is one point that I do want to address, and that is, as Your Honor is aware, in Luna Mariaga, the case that the district court relied on, this court seemed to suggest that physical removal alone is enough under Section 2L1.2. But it bears emphasis that there, the court also noted that an alien who illegally reenters the United States while under an order of removal has already received a full and fair hearing, including judicial review of that hearing, which affords all the process to which he is entitled. That's to say that one of the legal underpinnings for that decision was that there is a valid existing removal order. So subsequent removals affected pursuant to that valid existing order are themselves valid, and that's not the case here. So with that, unless the court has any questions, I would like to reserve the remainder of my time for rebuttal. Thank you, Mr. Packard. Thank you. Morning. Morning. Morning, Your Honors. Harold Chun for the United States. What the Petitioner is doing here is taking the due process protections required for a 1326 conviction and supposing them on the advisory guideline calculations for a 1325 sentencing. But these two things are completely different. They're not in there. Well, our sentencing law, I mean, our jurisprudence around, you know, since Booker requires that the district court correctly calculate the guidelines as an initial matter. And if it's an incorrect calculation, then it's procedural error. And I'm wondering, I mean, I'm troubled by whether or not an invalid deportation can serve as the basis for a 16-level enhancement, even though the maximum statutory maximum was two years. In other cases, this might result in, I mean, I guess it could never result in more than two years. But I'm just wondering why, whether or not an invalid deportation should be used to back up the guidelines so that it seems like the statutory maximum is now becoming a statutory minimum. Your Honor, I understand the point's concern here. However, again, this is a 1325 sentencing case, and we're talking about advisory guidelines. And when it comes to the point of sentencing, the law is clear that there are less due process protections. And the government's point here is that the protections required for a 1326 conviction are separate and apart for what we're talking about here in the advisory guideline range. And it's not that Mr. Rodriguez didn't have any process. And in fact, the process he had was considerable. In 2000, he was removed from the United States via stipulated removal. Well, do you concede that that stipulated removal proceeding violated Rodriguez's due process rights under Ramos? Your Honor, I believe there is a, if this was remanded district court, although the finding isn't there, I do believe there would likely be a holding that would be insufficient. Okay, and that's, and I'm going to assume that that's why the government brought a 1325 instead of a 1326. Yes, Your Honor. All right, so we have a concededly defective initial deportation filed, followed by a couple more reinstatements of the invalid order. Yes, Your Honor. All right. Again, the United States believes there's less due process protections here, because again, we're talking about sentencing. And going back to what Mr. Rodriguez faced is that in 2000, he was removed from the United States via the stipulated removal, where an immigration officer sat down and explained to him both in writing and orally his immigration rights. Immigration judge then reviewed the facts of his case and issued a removal order. He was then physically removed from the United States by immigration officers who escorted him out of the country via a port of entry. Following that, history shows that he was, he illegally reentered and was convicted of 1325 misdemeanor, removed again, came back in again, convicted of a 1326 felony for which he received 30 months. He was removed again, came back in again in October 2009, and on that occasion, he was removed without any prosecution. Illegally reentered again after that, and the two, just two and a half weeks later, and the two October 2009 illegal entries are the basis of the convictions in this count. So I think if the question is whether or not he had due process, the United States position is that he did. What case would allow us to treat these removals differently for sentencing than we would as a substantive element? Do you have any case that would say that? I apologize, Your Honor. What would differentiate this from a sentencing? Yeah, I mean, you admit that you couldn't use this, these reinstatements to prove an element in the 1326 case. Yes, Your Honor. If you're saying the sentencing is different, we can use it to calculate the guidelines. Yes, Your Honor. I'm asking you what case do you have that supports that? And to be clear, there are no cases on point. This is an area of the law where the cases that both parties cite to are talking about 1326, that due process protection is required for a 1326 conviction. However, the Supreme Court holding Mendoza-Lopez is concerned about this charge, relying on an administrative proceeding to be convicted of a count. But this question doesn't come here until sentencing, where perhaps the guidelines are the best example of showing that there's less protections. Am I understanding you to say that in answer to my question, I'm not trying to put words in your mouth, there is no authority to support what you're saying? Yes, Your Honor. That's correct. Other than general case law, they're saying that there are less protections at sentencing than at a criminal conviction. I mean, all the arguments you make, all the arguments you make, the judge could certainly consider them under Section 3553A, correct? Yes, Your Honor. It would be cleaner just not to procedurally enhance based on a defective deportation, but in this particular case, recognizing the circumstances and the nature and history and the nature of the events, I could see the judge reaching the same result, but it would be under the advisory, I mean, under the discretionary part. The procedural error, if there is one, is troubling. It just seems cleaner to let the judge consider all these factors, but in the proper order of things. And yes, Your Honor, and I actually believe that would probably hold true for most sentencing, that the guidelines are now clearly shown as advisory and the judges have full discretion under 3553A. But I also believe that's part of the protection here, why there's less due process protections at sentencing, because the judge, once properly calculating the guidelines, then has an obligation to minimize those guidelines, if that's what's necessary to fashion. Well, not minimize. I mean, they can go beyond the guidelines, too, if the statutory maximum allows them to. Yes, Your Honor. And the other concern of the United States here is that to find the holding that the petitioner requests would be to read into the language of the advisory guidelines, to track the language of 1326A, a holding that's never been done before, and that's inherently in the language of 1326, that there's a due process protection element.  In fact, the difference is that in 1326D, Congress codified those protections. And so really what the petitioner is asking here is to take the protections of 1326D and find that they're inherent in the advisory guidelines. And I don't believe there's any law to support that. There's any reason to do that. There's no law either way for either of you. Yes, Your Honor. This is a novel. Yes, Your Honor. But the case law of the United States does cite two, Luna Mariega and Diaz Lula Bono. The reason the United States relies on those two cases primarily is because those two cases address the question of what the court was looking at in the increase of a statutory maximum from 2 years to 20 years. And the holding of both those cases was that the only element required to enhance the statutory maximum from 2 to 20 in the context of 1326 was the physical removal of an alien. Well, that's the only additional burden of proof for increasing the stat max tenfold. The United States believes that that is more than sufficient to be the burden for advisory guideline calculation. And so by holding that physical removal mentioned in Luna Mariega and Diaz Lula Bono is sufficient for the increase of statutory maximum, that would be more than sufficient for the advisory guideline calculations here. Again, this is a 1325 sentencing. I think what you're arguing is that there's a difference between an element of the offense versus a sentencing enhancement under the guidelines. Yes, Your Honor. And it's probably true, but don't they each deprive the defendant of liberty?  In the first instance, for the prosecution of her conviction, we are talking about facing a sanction. But that decision was already made here. The jury found him guilty. The only question here is whether or not the judge can consider the fact that Mr. Rodriguez should be held in a different light than an alien who hasn't been removed after a conviction. We're just talking about where he should fall in the statutory maximum. Yes, Your Honor. And invalid deportation should be considered in the process of sentencing. Yes, Your Honor. And the United States relies on the case law that in the showing of statutory maximums and as an afterthought, the 2L1.2 enhancements, that the physical removal was enough. That's the only additional element the United States needs to prove at trial, to increase the statutory maximum up to 20 years. That case doesn't help you really, though, because that was a valid order of deportation. I agree, Your Honor. And that's why these cases aren't directly on point, because this is a 1325 prosecution, where the deportation isn't an element of defense. All we're talking about is sentencing. And really, the contrast between 1326 and 1325 couldn't be any more different. Had the petitioner been convicted of a 1326, his guideline range would have been 92 to 115 months. Instead, he was facing a charge of a 24-month statutory maximum. And in this case, he received two because of his own conduct. And then this district court judge provided him a sentence of running them consecutively, because her theory was that he had not received a deterrence from a 30-month sentence. Unless the court has further questions, I see that I'm running out of time. You're out of time. Thank you, Mr. Chairman. Thank you very much, sir. Mr. Packer, I think you had about a minute left. Yes, Your Honor. First, to clarify, in Mendoza-Lopez, the Supreme Court didn't have its ruling to the elements. It said where an administrative proceeding is to play a critical role in the subsequent position of criminal sanction. That's what we have here. Second, to Judge Wortenau's point with respect to the statutory maximum now becoming the statutory minimum, it would be curious if the commission were to promulgate guidelines that in every possible event where the plus 16 is applied, the guideline range would far exceed the statutory maximum. It would confound reason to imagine that that's what the commission intended. Third, counsel noted that there is nothing to be read into the fact that the commission used the definition of deportation in 201.2 that Congress used in 1326. But it obviously bears noting, and you set this out in our briefs, that that change was based on a directive from Congress to conform Section 201.2 with 1326, and the commission is presumed to know the law attendant to statutes when it wraps its guidelines. So if we agree with you, we should reverse the sentence, remand it for resentencing, instruct the judge not to use the prior removal to enhance, but the judge is free to take into account these reinstatements, returns after reinstatements for whatever purpose she deems fit. I think that's right. I think more specifically, Your Honors, we were talking about earlier, she can consider the conduct that he returns and obviously the convictions that he suffered upon return, but cannot take into account the fact that he was deported in violation of his due process rights. And finally, just to counsel's last point, that he really ought to have been subject to a 92- to 115-month guideline range. But that obviously isn't the case because there wasn't a valid deportation. You're over your time. Thank you very much, Mr. Packard. Mr. Chun, thank you, too. The case just argued is submitted. Good morning, gentlemen. Very excellent argument, counsel. 0874139, Prado-Espinoza v. Holder. Each side will have 15 minutes.
judges: Fletcher, Silverman, Wardlaw